

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 23, 1996

Mr. Mike Moses
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. DM-418

Re: Whether section 44.031 of the Education Code, enacted by Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Sess. Law Serv. 2207, 2425-26, changes the conclusion reached in Attorney General Opinion DM-347 (1995) and related questions (RQ-836)

Dear Commissioner Moses:

You request this office to reconsider Attorney General Opinion DM-347 (1995) in light of newly enacted section 44.031 of the Education Code, *see* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Sess. Law Serv. 2207, 2425-26. You also ask several questions regarding the competitive bidding process as it applies to public schools.

In Attorney General Opinion DM-347, issued May 4, 1995, this office considered whether section 21.901 of the Education Code, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58(a)(1), 1995 Tex. Sess. Laws 2207, 2498, requires a school district to competitively bid a contract for the purchase of insurance. Attorney General Opinion DM-347 (1995) at 1. Overruling Attorney General Opinion MW-342 (1981), Attorney General Opinion DM-347 concluded that the purchase of insurance does not constitute the purchase of professional services exempt from competitive bidding requirements. Attorney General Opinion DM-347 (1995) at 5. Rather, the opinion determined that a contract to purchase insurance constitutes a contract to purchase personal property; accordingly, section 21.901 of the Education Code required a school district to competitively bid the purchase unless the value of the contract for one year is less than $25,000. *Id.* The opinion did not limit its conclusion to the purchase of a particular kind of insurance, *e.g.*, property and casualty insurance.

At the time this office issued Attorney General Opinion DM-347, section 21.901 of the Education Code provided in pertinent part as follows:

> (a) Except as provided in this section, all contracts proposed to be made by any Texas public school board for the purchase of any personal property, except produce or vehicle fuel, shall be submitted to competitive bidding for each 12-month period when said property is valued at $25,000 or more, in the aggregate for each 12-month period.

(b) Except as provided in Subsection (e) of this section, all contracts proposed to be made by any Texas public school board for the construction, maintenance, repair or renovation of any building shall be submitted to competitive bidding when said contracts are valued at more than $15,000. . . .

(c) Nothing in this section shall apply to fees received for professional services rendered, including but not limited to architect[']s fees, attorney's fees, and fees for fiscal agents.

Subsequent to the issuance of Attorney General Opinion DM-347, the Seventy-fourth Legislature repealed section 21.901, transferring its subject matter to section 44.031 of the Education Code and amending the substance. Section 44.031 provides in pertinent part as follows:

(a) Except as provided by this section, all school district contracts, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period shall be made by the method, of the following methods, that provides the best value to the district:

(1) competitive bidding;

(2) competitive sealed proposals;

(3) a request for proposals;

(4) a catalogue purchase as provided by Subchapter B, Chapter 2157, Government Code;[1]

(5) an interlocal contract;[2] or

---

[1]Chapter 2157, subchapter B of the Government Code provides that the General Services Commission or a state agency may purchase an automated information system through a catalogue purchase procedure. Gov't Code § 2157.061. A vendor who wishes to sell automated information systems to state agencies using the catalogue purchase method must apply to the General Services Commission for designation as a qualified information systems vendor. Id. § 2157.062(a); see also id. §§ 2157.064, .065 (pertaining to regional and statewide qualification of vendors and prescribing standards and criteria for qualification of vendors). A qualified information systems vendor must publish and maintain a catalogue describing each product and service available for purchase, the list price, and the price to a state agency. Id. §§ 2157.062(b)(1), .066.

A state agency may purchase or lease an automated information system directly from a qualified information systems vendor. Id. § 2157.063(a). The purchase or lease must, however, be the "best value available." Id. A local government, such as a school district, may avail itself of the catalogue purchase procedure if the local government qualifies for cooperative purchasing under Local Government Code sections 271.082 and 271.083. Id. § 2157.067(a).

[2]Chapter 791 of the Government Code controls the formation of interlocal cooperation contracts. Under section 791.011(a), "[a] local government may contract or agree with another local government to

(6) a design/build contract.[3]

(b) In determining to whom to award a contract, the district may consider;

(1) the purchase price;

(2) the reputation of the vendor and of the vendor's goods or services;

(3) the quality of the vendor's goods or services;

(4) the extent to which the goods or services meet the district's needs;

(5) the vendor's past relationship with the district;

(6) the impact on the ability of the district to comply with laws and rules relating to historically underutilized businesses;

(7) the total long-term cost to the district to acquire the vendor's goods or services; and

---

(footnote continued)

perform governmental functions and services." The term "local government" means a county, municipality, special district, or other political subdivision, or a combination of two or more of those entities. Gov't Code § 791.003(4). The term "political subdivision" includes "any corporate and political entity organized under state law." *Id.* § 791.003(5).

A local government that is a party to an interlocal cooperation contract also may contract with a state agency, as defined by section 771.002 of the Government Code. *Id.* § 791.011(b). A contract between a local government and an entity that is neither another local government nor a state agency is not an interlocal cooperation contract under chapter 791 of the Government Code.

Parties may enter an interlocal contract only for one of two purposes:

(1) [to] study the feasibility of the performance of a governmental function or service by an interlocal contract; or

(2) [to] provide a governmental function or service that each party to the contract is authorized to perform individually.

*Id.* § 791.011(c). Thus, no party to an interlocal contract may perform a function or service that is inconsistent with the authority of any party to the contract.

[3]In Attorney General Opinion JM-1189 this office described a design/build contract as a contract in which an "owner contracts with a single party for both the design and construction of the entire project," as opposed to the traditional arrangement in which the owner contracts with both an architect and a contractor. Attorney General Opinion JM-1189 (1990) at 2 (citing Hal G. Block, *As the Walls Came Tumbling Down: Architects' Expanded Liability Under Design-Build/Construction Contracting*, 17 JOHN MARSHALL L. REV. 1 (1984)).

(8) any other relevant factor that a private business entity would consider in selecting a vendor.

(c) The state auditor may audit purchases of goods or services by the district.

(d) The district may adopt rules and procedures for the acquisition of goods or services.

(e) To the extent of any conflict, this section prevails over any other law relating to the purchasing of goods and services except a law relating to contracting with historically underutilized businesses.

(f) This section does not apply to fees received for professional services rendered, including architect's fees, attorney's fees, and fees for fiscal agents. [Footnotes added.]

Thus, section 44.031 "[s]ets forth methods by which all school district contracts shall be made, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period." Senate Research Center, Bill Analysis 176, S.B. 1, 74th Leg., R.S. (1995). Also, fees received for professional services rendered are not subject to section 44.031. Educ. Code § 44.031(f).

We found nothing in the legislative history explaining the legislature's motivation for altering schools' purchasing procedures.[4] We believe the revision is consistent with

---

[4]As introduced, section 44.031(a), (b), (c) substantially duplicated section 21.901(a), (b), (c):

Sec. 44.031 [21.901]. CONTRACTS--COMPETITIVE BIDDING. (a) Except as provided by [in] this section, all contracts proposed to be made by the [any Texas public school] board of trustees of a school district for the purchase of any personal property, except produce or vehicle fuel, must [shall] be submitted to competitive bidding for each 12-month period when the [said] property is valued at $25,000 or more, in the aggregate for each 12-month period.

(b) Except as provided by [in] Subsection (e) [of this section], all contracts proposed to be made by the [any Texas public school] board of trustees of a school district for the construction, maintenance, repair, or renovation of any building must [shall] be submitted to competitive bidding when the [said] contracts are valued at more than $15,000. In this section, maintenance includes supervision of custodial, plant operations, maintenance, and ground services personnel.

(c) This [Nothing in this] section does not [shall] apply to fees received for professional services rendered, including [but not limited to] architects [sic] fees, attorney's fees, and fees for fiscal agents.

S.B. 1, 74th Leg., R.S. (1995) (as introduced).

The Senate Committee on Education amended subsection (b), the provision requiring the board of trustees of a school district to competitively bid a contract for the construction, maintenance, repair, or renovation of a building, by adding a provision permitting a board to award the contract "by the method

one of the primary purposes of Senate Bill 1, however, which was to allow more local control over schools. *See* Education for Tomorrow: The Public Schools Reform Act of 1995 at 1 (explaining that S.B. 1 proposes to rein in powers of State Board of Education), 2 (explaining that S.B. 1 proposes to establish regional education service centers), 6 (explaining that S.B. 1 would allow local school districts, rather than State Board of Education, to adopt textbooks) (available in bill file). We deduce, therefore, that the legislature wanted each local school district to have more control over the means by which the school district awards contracts. Although section 44.031 now allows a school district flexibility to select the means it will use to award a particular contract from the list in subsection (a), the school district always must have as its goal obtaining the best value for the school district. *See* Educ. Code § 44.031(a).

Section 44.031 prevails over Attorney General Opinion DM-347 to the extent the opinion is inconsistent with the statute. Nevertheless, section 44.031 does not affect our conclusion in Attorney General Opinion DM-347 that a contract for the purchase of insurance is not a contract for professional services. *See* Attorney General Opinion DM-347 (1995) at 5.

Whether a contract for the purchase of insurance is a contract to purchase personal property no longer matters in the context of section 44.031. Under section 44.031 of the Education Code, a school board must award all contracts not for professional services, produce, or vehicle fuel in accordance with subsection (a), so long as the value of the contract exceeds $24,999.99 in the aggregate for a twelve-month period.

---

(footnote continued)

that provides the best value to the district." The amendment provided a nonexclusive list of five different methods a board might use: competitive bidding; competitive sealed proposals; catalogue purchase; a group purchasing program; or an open market contract. The amendment further listed those factors a board must consider in determining the best value to the district. The committee did not amend subsection (a), pertaining to contracts for the purchase of personal property generally. The full Senate approved the committee substitute for subsection (b) without amendment.

The House Committee on Public Education clarified subsection (b) by deleting the competitive bidding requirement, thus permitting a school district to contract for the construction, maintenance, repair, or renovation of a building by using the one of five listed methods that provides the best value to the district. The five listed methods were substantially the same as the five listed in the Senate's version of the bill.

The conference committee amended section 44.031 to the form in which the legislature finally passed it. Both the Senate and the House of Representatives passed a resolution noting that the conference committee had amended section 44.031 differently from either the previous senate or house version of the bill. *See* S.R. 1258, 74th Leg., R.S. (1995); H.R. 1145, 74th Leg., R.S. (1995). Each resolution explained that the revisions were necessary to "clarify the manner in which school district[s] can make purchases of personal property and to impose consistent restrictions on purchases of personal property and certain buildings contracts made in relation to buildings." S.R. 1258, 74th Leg., R.S., 65 (1995).

You first ask whether Attorney General Opinion DM-347 precludes a school district from using any of the purchasing methods listed in section 44.031(a). Clearly, it does not. To the extent Attorney General Opinion DM-347 concludes that a school district must competitively bid a contract for the purchase of insurance, section 44.031 of the Education Code supersedes the opinion. A school district must award a contract to purchase insurance, provided the value of the contract exceeds $24,999.99 in the aggregate for a twelve-month period, using one of the methods listed in section 44.031(a). The board of trustees of the school district must select the method "that provides the best value to the district." Educ. Code § 44.031(a).

You next ask whether Attorney General Opinion DM-347 precludes a school district from executing an insurance contract for a period longer than twelve months. It does not. Neither section 44.031 of the Education Code nor Attorney General Opinion DM-347 limits the length of contract the board of a school district may enter. *But see* Local Gov't Code § 271.009 (limiting term of contract to twenty-five years). The board of trustees of a school district must award a contract in accordance with section 44.031(a) if the value of the contract is $25,000 or more in the aggregate for each twelve-month period covered in the contract.

A multi-year contract must, however, contain a clause retaining to the school board "the continuing right to terminate at the expiration of each budget period of the [school district] during the term of the contract . . . ." *Id.* § 271.903(a); *see id.* § 271.903(b) (defining "local government" to include school district). In the alternative, the school board may condition the contract on "a best efforts attempt by [the school board] to obtain and appropriate funds for payment of the contract . . . ." *Id.* § 271.903(a). The school board also may include both provisions in the contract, providing the school district a continuing right to terminate and conditioning the contract on the school board's best efforts to appropriate funding. *Id.*

Third, you ask whether a school district may, under section 44.033 of the Education Code, execute an insurance contract for a period longer than twelve months. Section 44.033 provides an alternative method for the purchase of personal property valued between $10,000 and $25,000.[5] As this office determined in Attorney General Opinion DM-347, a contract to purchase insurance is a contract to purchase personal property.

---

[5]Section 44.033(a) also permits a school district to purchase items of personal property, the value of which is at least $10,000 but less than $25,000, in the aggregate, for a 12-month period, in accordance with section 44.031(a) and (b).

Section 44.033 provides in pertinent part as follows:

> (a) A school district shall purchase personal property as provided by this section if the value of the items is at least $10,000 but less than $25,000, in the aggregate, for a 12-month period. In the alternative, the school district may purchase those items in accordance with Sections [*sic*] 44.031 (a) and (b).

> (b) For each 12-month period, the district shall publish a notice in two successive issues of any newspaper of general circulation in the county in which the school is located. If there is no newspaper in the county in which the school is located, the advertising shall be published in a newspaper in the county nearest the county seat of the county in which the school is located, specifying the categories of personal property to be purchased under this section and soliciting the names . . . of vendors that are interested in supplying any of the categories to the district. For each category, the district shall create a vendor list consisting of each vendor that responds to the published notice and any additional vendors the district elects to include.

> (c) Before the district makes a purchase from a category of personal property, the district must obtain written or telephone price quotations from at least three vendors from the list for that category . . . . The purchase shall be made from the lowest responsible bidder.

We find nothing in section 44.033 prohibiting a school district from entering a contract for the purchase of insurance with a duration longer than twelve months. *But see* Local Gov't Code § 271.009 (limiting term of contract to twenty-five years). Subsection (b) does not limit the length of a contract; rather, it requires a school district to publish notice seeking vendors interested in supplying the school district with those goods the school district will be purchasing *in the upcoming twelve-month period*. If, therefore, a school district executes a multi-year insurance contract, it need not advertise for insurance vendors until the twelve-month period during which the school district will be executing a new insurance contract.

If the school district enters a multi-year contract, it must comply with section 271.903(a) of the Local Government Code. *See supra* at 6. Thus, the contract must include a clause retaining to the school district the continuing right to terminate the contract at the end of the school district's budget period, a clause conditioning the continuation of the contract on the school board's best efforts to appropriate funds for the payment of the contract, or both.

Your fourth question causes us to consider the value requirement articulated in sections 44.031(a) and 44.033(a). You ask whether a school district must aggregate different types of insurance, *e.g.*, workers' compensation insurance and health insurance,

to determine the value, for purposes of ascertaining the methods the school district may use to purchase the insurance. You also ask whether a school district may assume that it need not aggregate coverage in different "lines" of insurance, as defined by rule of the commissioner of insurance, for purposes of section 44.031(a) and section 44.033(a). You ask whether a school district must aggregate insurance coverage under different types of insurance if the coverage is available under a single contract in the local market.

You do not indicate any particular rule of the commissioner of insurance that defines "lines" of insurance. We note that the Department of Insurance has, in its rules, categorized the various types of insurance as follows: life, accident, and health insurance, *see* 28 T.A.C. ch. 3; property and casualty insurance, *see id.* ch. 5; title insurance, *see id.* ch. 9; surplus lines insurance, *see id.* ch. 15; and prepaid legal service, *see id.* ch. 23. We understand you to inquire whether, for purposes of determining the value of a contract, a school district may consider, for example, the value of its health insurance coverage separately from the value of its property insurance coverage, its workers' compensation coverage, or its life insurance coverage. We believe the answer to your question lies in the phrase "in the aggregate" in sections 44.031(a) and 44.033(a).

The Education Code does not define either the phrase "in the aggregate" or the term "aggregate"; nor do we find a definition elsewhere in state law. In common usage, *see* Gov't Code § 311.011, the phrase "in the aggregate" means "considered as a whole." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 64 (1990). The term "aggregate" denotes the "[e]ntire number, sum, mass, or quantity of something; total amount; complete whole." BLACK'S LAW DICTIONARY 60 (5th ed. 1979); *see also* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 30 (1987). In examining the definitions of "aggregate," we note that the word appears to connote a collection of associated items.[6] *See* 1 OXFORD ENGLISH DICTIONARY 252-53 (2d ed. 1989).

Section 44.031(a) provides that, in general, a school district must use one of the specified purchasing methods to contract for anything, except professional services, vehicle fuel, or produce, "valued at $25,000 or more in the aggregate for each 12-month period . . . ." Clearly, the school district need not add together the value of all of the contracts it proposes to execute during a 12-month period. If it did, a school district always would cross the $25,000 line and have to award all of its contracts in accordance with section 44.031(a). On the other hand, we believe the phrase "in the aggregate" in section 44.031 of the Education Code limits a school district's authority to consider the value of each purchase separately.

Section 44.032(b) of the Education Code forbids, in certain circumstances, an officer, employee, or agent of a school district to make or authorize "separate, sequential,

---

[6]For example, in law the term "aggregate" means "[c]omposed of many individuals united into one association." 1 OXFORD ENGLISH DICTIONARY 252 (2d ed. 1989). In zoology, the term means "[c]onsisting of distinct animals united into a common organism." *Id.* In physics, the term refers to "[a] mass formed by the union of homogenous particles." *Id.* at 253.

or component purchases" of items that "in normal purchasing practices would be purchased in one purchase," *see* Educ. Code § 44.032(a)(1), (2), (3). Without determining that "in the aggregate" is duplicative of the restriction on separate, sequential, or component purchases as a matter of law, we believe we must construe the phrase consistently with the restriction, as well as the common usage of the word "aggregate." Accordingly, we conclude that the phrase "in the aggregate" requires a school district cumulatively to value contracts for like products that a school district normally would purchase together, but only for purposes of determining when a formal procurement process is required by law.[7]

As you suggest, whether a school district may aggregate different insurance coverages may depend upon the local market; the question also may depend upon the types of coverage involved, the size or location of the school district, and other factors that we are unable to predict. Possibly, one school district would normally contract to purchase certain products together, while another school district normally would not contract to purchase the same products together.

Again, the statute expressly requires a school district to consider the aggregate value of certain contracts to be executed in a twelve-month period only in reference to determining whether the school district must use one of the methods listed in section 44.031(a) of the Education Code to make the contract. We do not read section 44.031(a) to require a school district to make the contracts for like products "in the aggregate." Thus, once a school district has aggregated the value of contracts it desires to enter during the twelve-month period to determine whether it must make the contract using one of the methods listed in section 44.031(a), it may enter each contract separately.

In your final question you ask whether the services of a third-party administrator who is licensed under Insurance Code article 21.07-6 are professional services that a school district need not bid under section 44.031(f). Article 21.07-6, section 1(1) defines "administrator" as "a person[8] who collects premiums or contributions from or who adjusts or settles claims in connection with life, health, and accident benefits or annuities for residents of this state." (Footnote added.) *See also* 28 T.A.C. § 7.1601. The definition excludes certain persons, such as an employer on behalf of its employees, a health maintenance organization, or a person who adjusts or settles claims in the normal course of his or her practice as a licensed attorney. Ins. Code art. 21.07-6, § 1(1)(A), (D), (K). Incidentally, the definition of "administrator" also excludes "a self-insurance pool

---

[7]*Cf.* 29 C.F.R. § 5.15(b)(2) (1992) (exempting from Contract Work Hours and Safety Standards Act purchase or contract "in the aggregate amount of $2,500.00 or less" and stating that, to determine aggregate amount, one must include "all property and services which would properly be grouped together in a single transaction").

[8]Article 21.07-6, section (1)(7) of the Insurance Code defines "person" as "an individual, partnership, corporation, organization, government or governmental subdivision or agency, business trust, estate trust, association, or other legal entity."

composed of political subdivisions of this state that participate in a fund or pool through interlocal agreements and . . . any nonprofit entity that acts solely on behalf of a fund, pool, agency, or body . . . ." *Id.* § 1(1)(O).

To become a licensed third-party administrator, a person must obtain a certificate of authority from the commissioner of insurance. *Id.* § 3(a). In its application for a certificate of authority, an applicant must provide the commissioner with copies of organizational documents, such as the articles of incorporation and bylaws; a description of the administrator; if the applicant is not domiciled in this state, a power of attorney appointing the commissioner as the administrator's attorney; financial audits; and any other information the commissioner requires. *Id.* § 4; *see also* 28 T.A.C. §§ 7.1603, .1605. The commissioner of insurance must approve the application if he or she is satisfied that the application meets the following criteria:

(1) the granting of the application would not violate a federal or state law;

(2) the financial condition of an administrator applicant or those persons who would operate or control an administrator applicant are such that the granting of a certificate of authority would not be adverse to the public interest;

(3) the applicant has not attempted through fraud or bad faith to obtain the certificate of authority;

(4) the applicant has complied with this article and rules adopted by the board under this article; and

(5) the name under which the applicant will conduct business in this state is not so similar to that of another administrator or insurer that it is likely to mislead the public.

Ins. Code art. 21.07-6, § 5(a).

Once the commissioner of insurance has approved an application for a certificate of authority, the third-party administrator must obtain and maintain a fidelity bond. *Id.* § 6(a); *see also* 28 T.A.C. § 7.1613. The third-party administrator also must submit to examinations by the commissioner of insurance or the commissioner's designee, which examination will include a review of all of the administrator's written agreements with various insurers[9] and plans,[10] as well as a review of the administrator's financial statements. Ins. Code art. 21.07-6, § 8(c); *see also* 28 T.A.C. § 7.1610.

---

[9]An "insurer" for purposes of article 21.07-6 of the Insurance Code is "a person who transacts a life, health, or accident insurance business under the law of this state." Ins. Code art. 21.07-6, § 1(5).

[10]A "plan" is "a plan, fund, or program established, adopted, or maintained by a plan sponsor or insurer to the extent that the plan, fund, or program is established, adopted, or is maintained to provide

In Attorney General Opinion JM-1038 this office considered whether the third-party administrator of an insurance contract provides professional services, the purchase of which need not be competitively bid under chapter 252 of the Local Government Code. Attorney General Opinion JM-1038 (1989) at 1. (Like section 44.031 of the Education Code, Local Government Code section 252.022(a)(4) excepts from the requirement that a municipality competitively bid certain expenditures "a procurement for . . . professional services.") Using the definition of "administrator" or "third party administrator" in Insurance Code article 21.07-5, *repealed by* Act of May 29, 1989, 71st Leg., R.S., ch. 1094, § 4, 1989 Tex. Gen. Laws 4477, 4491, the opinion stated that an administrator is a person who receives a fee or compensation "for performing or providing any service, function, or duty, or activity respecting insurance . . . in any administrative or management capacity." Attorney General Opinion JM-1038 (1989) at 1-2. Because of the breadth of the definition, the opinion stated, a third-party administrator may "include services ranging from simple clerical ones to complex ones requiring high levels of expertise." *Id.* at 2.

The opinion then considered the nature of professional services. As the opinion noted, this office previously defined professional services to include any member of a discipline "requiring special knowledge or attainment and a high order of learning, skill, and intelligence." *Id.* (quoting Attorney General Opinion JM-940 (1988)). This office refrained, however, from determining whether the services offered by a third-party administrator are professional services because the specific services a third-party administrator performs will depend upon a particular contract. *Id.* at 3-4.

We believe the conclusion reached in Attorney General Opinion JM-1038 is subject to reexamination because the legislature repealed article 21.07-5 of the Insurance Code, the statute on which the opinion relied. As compared to the definition of "administrator" in the now-repealed article 21.07-5, the definition in article 21.07-6 is explicit: a third-party administrator collects life, health, and accident insurance premiums or contributions and adjusts or settles life, health, and accident insurance claims. *See* Ins. Code art. 21.07-6, § 1(1). The application procedures and approval criteria in article 21.07-6 are similar to those in article 21.07-5, although not identical. *Compare* Ins. Code art. 21.07-6, §§ 4, 5 *with id.* art. 21.07-5, §§ 4, 6, *repealed by* Act of May 29, 1989, 71st Leg., R.S., ch. 1094, § 4, 1989 Tex. Gen. Laws 4477, 4491.

In Attorney General Opinion DM-347 this office discussed the nature of professional services more fully than in Attorney General Opinion JM-1038:

> According to Attorney General Opinion MW-344, a professional service is one requiring "'predominantly mental or intellectual, rather than physical or manual,'" skills. Attorney General Opinion MW-344 (1981) at 4 (quoting *Maryland Casualty Co. v. Crazy Water Co.*,

---

(footnote continued)
indemnification or expense reimbursement for any type of life, health, or accident benefit." Ins. Code art. 21.07-6, § 1(6).

160 S.W.2d 102, 105 (Tex. Civ. App.–Eastland 1942, no writ)). Furthermore, a "professional" works in a profession that "'requires years of education and service for one to attain competence and [that] calls for a high order of intelligence, skill and learning.'" *Id.* (quoting *Transportation Displays, Inc. v. City of New Orleans*, 346 So. 2d 359, 363 n.5 (La. Ct. App. 1977)).

Finally, [Attorney General Opinion MW-344] discussed "[t]he most useful standard for judging the scope of 'profession'" from *Wooddell v. Dailey*, 230 S.W.2d 466 (W. Va. 1976). *Id.* at 5. The *Wooddell* court concluded that the services of an interior decorator were not professional services. The *Wooddell* court did not, however, limit the term "professional services" to the professions of theology, law, or medicine, nor to professions specifically recognized as such by statute. *Id.* (citing *Wooddell*, 230 S.E.2d at 469-70). Rather, while "'most occupations, trades, business or callings require a diversity of knowledge and skill,'" not all such occupations, trades, business or callings could be called "professions." *Id.* (quoting *Wooddell*, 230 S.E.2d at 470). A professional is only one who "'is a member of [a] discipline with widely accepted standards of required study or specified attainments in special knowledge as distinguished from mere skill.'" *Id.* (quoting *Wooddell*, 230 S.E.2d at 470).

Attorney General Opinion DM-347 (1995) at 3-4 (footnote omitted).

We find little evidence in the Insurance Code that the services of a third-party administrator require predominantly mental or intellectual skills, the acquisition of which entail years of education and service. *See id.* at 3. Additionally, we find little evidence that a third-party administrator belongs to a "discipline with widely accepted standards of required study or specified attainments in special knowledge as distinguished from mere skill." *See id.* at 3-4 (quoting Attorney General Opinion MW-344 (1981) at 5 [quoting *Wooddell v. Dailey*, 230 S.E.2d 466 (1976)]). We cannot say as a matter of law, however, that a third-party administrator does not provide professional services; such a decision depends, in part, on the actual functions a third-party administrator performs. We do not know, for example, whether the duty of the third-party administrator to pay claims is ministerial, that is, whether the third-party administrator pays claims on the orders of the school district, or whether the third-party administrator must interpret the law to determine whether to pay a particular claim.[11]

---

[11]We do not mean to suggest that, even if a third-party administrator interprets the law to determine whether to pay a particular claim, the services of the third-party administrator are professional services for purposes of Education Code section 44.031(f).

Furthermore, this office generally abstains from determining whether a particular service is a professional service for purposes of a statute other than the Professional Services Procurement Act, V.T.C.S. art. 664-4, because of the fact-based nature of such a determination. *See, e.g.,* Attorney General Opinions DM-106 (1992) at 2; JM-1136 (1990) at 2-3; JM-1038 (1989) at 3. *But see* Attorney General Opinion JM-940 (1988) at 4. In our opinion, the school board is the proper authority to determine the actual functions of a particular third-party administrator for purposes of section 44.031 of the Education Code.

Of course, except for the professional services listed in the Professional Services Procurement Act, V.T.C.S. art. 664-4, a school district may contract for professional services using any appropriate method listed in section 44.031(a) of the Education Code. *Cf.* Attorney General Opinion DM-106 (1992) at 2. *Compare* Educ. Code § 44.031(f) *with* Local Gov't Code § 252.022(a)(4).

You ask whether "reinsurance procurement duties" included in a claims administration contract with a licensed third-party administrator are professional services for purposes of section 44.031(f) of the Education Code. You do not indicate what "reinsurance procurement duties" are. From the phrase itself, we guess that such duties consist of pricing and acquiring, on behalf of a school district, reinsurance for the school district's self-insurance fund. As this office stated in Attorney General Opinion DM-347, the purchase of insurance, even through an agent, is not a purchase of professional services. To the extent "reinsurance procurement duties" include other duties that we cannot guess, we do not determine whether such duties are professional services.

You ask whether a school board must award, in accordance with section 44.031 or 44.033 of the Education Code, a contract for professional services as well as nonprofessional services. To the extent that a contract, valued at $25,000 or more in the aggregate for a twelve-month period, is for anything other than professional services, produce, or vehicle fuel, a school district must award it using the one method among the six listed in section 44.031 that provides the best value to the school district. *See* Educ. Code § 44.031(a), (f). Likewise, to the extent a contract, valued at between $10,000 and $24,999.99, inclusive, in the aggregate for a twelve-month period, is for the purchase of personal property, a school district must award the contract either by competitively bidding the contract or in accordance with section 44.031(a) and (b). *See id.* § 44.033(a). The school board may, but need not, award any professional services included in the contract that are not covered by the Professional Services Procurement Act, V.T.C.S. art. 664-4, in accordance with section 44.031 or section 44.033, depending on the value of the contract. *See Wallace v. Commissioners[] Court of Madison County,* 281 S.W. 593, 595 (Tex. Civ. App.--Waco 1926), *rev'd on other grounds,* 15 S.W.2d 535 (Tex. 1929) (stating that where contract included some services requiring technical knowledge and some services or products that do not, those that do not must be competitively bid); *see also Gulf Bitulithic Co. v. Nueces County,* 297 S.W. 747, 753 (Tex. Civ. App.--San Antonio 1927), *rev'd on other grounds,* 11 S.W.2d 305 (Tex. 1928); Attorney General Opinion JM-890 (1988) at 4 (quoting *Wallace v. Commissioners Court[] of Madison Co.,*

280 S.W. 593 (Tex. Civ. App.--Waco 1926, *rev'd on other grounds*, 15 S.W.2d 535 (Tex. 1929)).

## S U M M A R Y

Newly enacted section 44.031 of the Education Code prevails over Attorney General Opinion DM-347 to the extent the opinion is inconsistent with the statute. Section 44.031 does not conflict with the conclusion in Attorney General Opinion DM-347 that a contract for the purchase of insurance is not a contract for professional services. Additionally, whether a contract for the purchase of insurance is a contract to purchase personal property no longer matters in the context of section 44.031.

To the extent Attorney General Opinion DM-347 concludes that a school district must competitively bid a contract, valued at more than $24,999.99 in the aggregate for a twelve-month period, for the purchase of insurance, section 44.031 of the Education Code supersedes the opinion. A school district must award such a contract using one of the methods listed in section 44.031(a). The board of trustees of the school district must select the method "that provides the best value to the district."

Neither section 44.031 of the Education Code nor Attorney General Opinion DM-347 precludes a school district from executing an insurance contract for a period longer than twelve months. A multi-year contract must, however, comply with section 271.903(a) of the Local Government Code.

Nothing in section 44.033 of the Education Code prohibits a school district from entering a contract for the purchase of insurance with a duration longer than twelve months. Section 44.033(b) of the Education Code does not limit the length of a contract; it merely requires a school district to publish notice seeking vendors interested in supplying the school district with those goods the school district will be purchasing *in the upcoming twelve-month period*. If the school district enters a multi-year contract, it must comply with section 271.903(a) of the Local Government Code.

The requirement in sections 44.031 and 44.033 of the Education Code, referring to the value of purchases "in the aggregate" indicates that a school district cumulatively must value contracts for like products that a school district normally would purchase together, but only for purposes of determining when a formal procurement process is required by law.

Whether a third-party administrator, licensed under article 21.07-6 of the Insurance Code, provides a professional service depends upon whether the service requires predominantly mental or intellectual, rather than physical or manual, skills; whether years of education and service are necessary for a practitioner to attain competence as a third-party administrator; and whether a third-party administrator belongs to a discipline with widely accepted standards of required study or specified attainments in special knowledge as distinguished from mere skill.

To the extent "reinsurance procurement duties" consist of pricing and acquiring, on behalf of a school district, reinsurance for the school district's self-insurance fund, such duties are not professional services.

To the extent that a contract, valued at $25,000 or more in the aggregate for a twelve-month period, is for anything other than professional services, produce, or vehicle fuel, a school district must award it using the one method among the six listed in section 44.031 of the Education Code that provides the best value to the school district. Likewise, to the extent a contract, valued at between $10,000 and $24,999.99, inclusive, in the aggregate for a twelve-month period is for the purchase of personal property, a school district must award the contract either by competitively bidding the contract or in accordance with section 44.031(a) and (b). The school board may, but need not, award any professional services included in the contract that are not covered by the Professional Services Procurement Act, V.T.C.S. art. 664-4, in accordance with section 44.031 or section 44.033, depending on the value of the contract.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General